UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEBSEN ELECTRICAL, LLC,
d/b/a SEBSEN ELECTRICAL
CONTRACTORS,

    Plaintiff/Counter-Defendant,

v.                                    Case No. 8:20-cv-331-T-60AAS

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS
LOCAL UNION 915,

    Defendant/Counter-Plaintiff
_____/

**ORDER GRANTING IN PART AND DEFERRING IN PART
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on "Defendant/Counter-Plaintiff International Brotherhood of Electrical Workers Local Union 915's Dispositive Motion for Judgment on the Pleadings," filed on May 12, 2020. (Doc. 22). On June 9, 2020, Plaintiff/Counter-Defendant Sebsen Electrical LLC ("Sebsen") filed a response in opposition to the motion. (Doc. 25). On July 13, 2020, Defendant International Brotherhood of Electrical workers Local Union 915 (the "Union") filed a reply. (Doc. 31). The Court held a hearing on the Union's motion on September 1, 2020. After reviewing the motion, response, court file, and record, the Court finds as follows:

## Background

The material facts necessary to resolve the instant motion are largely undisputed. The Union and the Florida West Coast Chapter of the National Electrical Contractors Association ("NECA") entered into a collective bargaining agreement ("CBA") to take effect on December 1, 2017, for a term of two years. The CBA provided that it would continue from year to year unless terminated or changed according to its terms. It further provided that where either a notice of proposed changes or notice of intent to terminate had been timely provided, then "[u]nresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement" could be "submitted jointly or unilaterally" for arbitration to the Council on Industrial Relations for the Electrical Contracting Industry ("CIR").

In February 2018, Sebsen, an electrical contractor, executed a Letter of Assent appointing the Florida West Coast Chapter of NECA as its negotiating agent and agreeing to be bound by the CBA effective February 6, 2018. In February 2019, Sebsen gave timely written notice of its intent to terminate the Letter of Assent and the CBA. On August 26, 2019, the Union wrote to Sebsen requesting that Sebsen negotiate a new or successor CBA. Sebsen declined to negotiate, maintaining that it had no duty to do so. TheUnion unilaterally referred the matter to the CIR for arbitration. Sebsen received notice of the arbitration but once again declined to participate. On November 21, 2019, the CIR issued an arbitration award, directing

Sebsen to implement a new, modified CBA with a term running from December 1, 2019 to November 30, 2021.

Sebsen filed this suit against the Union seeking to vacate that arbitration award. The Union answered and counterclaimed against Sebsen seeking to confirm the award. The Union has now moved for judgment on the pleadings in its favor.

## Legal Standard

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Accordingly, a court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *See Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). The court must also consider the answer and any documents attached as exhibits. *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham*, 592 F.3d at 1255 (internal quotation omitted).

## Analysis

Sebsen's complaint asserts that the award must be vacated because Sebsen provided timely notice of its desire to terminate the agreement. As the Union correctly argues, however, interest arbitration provisions are not nullified by one

party's giving notice to terminate the collective bargaining agreement or by expiration of the agreement.  *See, e.g., Sheet Metal Workers' Int'l Ass'n Local 15, AFL-CIO v. Law Fabrication, LLC*, 237 F. App'x 543, 547 (11th Cir. 2007*); Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co.*, 786 F.2d 1459, 1460-61 (11th Cir. 1986); *Local Union No. 666, Int'l Brotherhood of Electrical Workers, AFL-CIO v. Stokes*, 225 F.3d 415, 421 (4th Cir. 2000).  Sebsen's response offers no contrary argument and affirmatively disclaims any reliance on termination of the CBA.  Accordingly, the Union is entitled to judgment on the pleadings to the extent Sebsen's complaint or its answer to the counterclaim assert Sebsen's termination of the CBA as a basis to vacate the award or oppose its confirmation.

Sebsen also asserts that the Union's August 2019 request to negotiate a new agreement did not include proposed new or changed terms.  Sebsen argues that, as a result, the requirements for invocation of the arbitration clause were not met.  The Court, disagrees, for three reasons.

First, under the express terms of the CBA, proposed changes could be provided *either* in the written notice *or* at the first negotiating meeting.  Although there was no "first negotiating meeting" here, that was only because Sebsen declined to participate.  Sebsen cannot argue that a precondition to arbitration did not occur when it was Sebsen who prevented it from occurring.  *See, e.g., Sheet Metal Workers' Int'l Ass'n, Local Union No. 2 v. McElroy's, Inc.*, 500 F.3d 1093, 1099 (10th Cir. 2007) ("[T]he agreement obligates the parties to negotiate a renewal

Case 8:20-cv-00331-TPB-AAS   Document 37   Filed 09/14/20   Page 5 of 8 PageID 246

agreement or to have one imposed upon them if one party timely gives notice of a desire to renew the agreement. A party cannot avoid this obligation by refusing to engage in negotiations."); *Paparone v. Lake Placid Holding Co.*, 438 So. 2d 155, 157 (Fla. 2d DCA 1983) (one who prevents the performance of a condition precedent "cannot avail himself of its nonperformance.").

Second, Sebsen's notice of termination itself independently allowed invocation of the arbitration clause. The CBA provides that a notice of desire to terminate should be handled in the same manner as a proposed change, and therefore that notice was equally subject to arbitration for "issues or disputes arising out of the failure to negotiate a renewal or modification."

Third, Sebsen's argument on this point relates to a precondition to arbitration, as opposed to the scope of the arbitration clause. As such, Sebsen was required to present it to the arbitrators to resolve, not to a court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002); *John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 557-59 (1964).

Sebsen, however, argues that the availability of arbitration under the circumstances presented here was a matter for a Court to decide, not the arbitrators. Sebsen relies heavily on a case from the Fourth Circuit, *Local Union No. 637, Int'l Brotherhood of Electrical Workers, AFL-CIO v. Davis H. Elliott Co.*, Civ. A. No. 92-0766-R, 1992 WL 553665 (W.D. Va. Dec. 29, 1992), *aff'd*, 13 F.3d 129 (4th Cir. 1993), to support its argument. After carefully reviewing *Elliot*, it is apparent to the Court that it is distinguishable in various important respects and,

Page 5 of 8

therefore, does not support Sebsen's argument. The holding in *Elliot* was dependent on the specific provisions of the contract at issue in that case. The specific provisions of the contract at issue here are very different from the contract in *Elliot*. Indeed, the arbitration provisions at issue in *Elliot* differed in two critical ways from those here. First, the agreement in *Elliot* required that where notice was given for proposed changes, "the nature of the changes desired must be specified in the notice." *Elliot*, 1992 WL 553665, at *1. The CBA here contains the same language, but then, as explained above, it *adds* "*or* no later than the first negotiating meeting unless mutually agreed otherwise." The Union therefore was not required to specify proposed changes in its August 2019 letter.

Second, the arbitration provision in *Elliot* applied to "[u]nresolved issues *in negotiations*." The Fourth Circuit held that where no negotiations had occurred due to the failure of one party to provide proper notice, then no "issues in negotiations" ever came into existence and there was therefore nothing to arbitrate. Here, however, the CBA's arbitration provision extends not merely to issues "in negotiations" but more broadly to "issues or disputes arising out of the *failure to negotiate a renewal or modification*" of the agreement. This language reaches precisely what occurred here.

For the foregoing reasons, the Union's motion for judgment on the pleadings is due to be granted to the extent that Sebsen's objections to the arbitration award are based on the scope of the arbitration agreement, the events giving rise to the arbitration, or any preconditions to arbitration. Because Counts I and II of Sebsen's

complaint are limited to these issues, the Union's motion will be granted as to these counts.  Count III of the complaint is framed in conclusory terms, some of which might encompass these same issues.  The Union's motion will therefore be granted as to Count III to the extent it relies on the same grounds.

Count III of the complaint and Sebsen's answer to the Union's counterclaim also assert issues relating to the content of CIR's arbitration award and the composition and neutrality of the CIR as an arbitral body.  The Union's motion addressed these points, but Sebsen declined to address them in its response.  While Sebsen therefore arguably waived these issues, justice requires that they be addressed on the merits.  In addition, Sebsen's pleadings raise these issues in conclusory fashion.  The Court could require Sebsen to file an amended complaint to sufficiently plead these issues and then allow a further round of motion practice.  The Court believes, however, that the more efficient approach is to defer ruling on the Union's motion for judgment on the pleadings as to these issues, subject to receiving supplemental memoranda from the parties, as set forth below.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant/Counter-Plaintiff International Brotherhood of Electrical Workers Local Union 915's Dispositive Motion for Judgment on the Pleadings" (Doc. 22) is **GRANTED IN PART** and **DEFERRED IN PART**.

2. The motion is **GRANTED** as to Count I and Count II, and as to Count III to the extent Count III is based on grounds relating to the scope of the arbitration agreement, the events that gave rise to the arbitration, or any alleged preconditions to arbitration.  The Court will enter a final judgment once all claims have been resolved.

3. The motion is **DEFERRED** with respect to Count III to the extent Count III is based on grounds relating to the composition or neutrality of the CIR or the content of the award itself.

4. Sebsen is directed to file, on or before September 28, 2020, a supplemental memorandum of no more than 10 pages in opposition to the Union's pending motion for judgment on the pleadings, limited to the issues described in the preceding paragraph.

5. The Union may then within 7 days file a supplemental reply memorandum of no more than 5 pages.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 14th day of September, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**